THOMPSON, APPELLANT, *v.* McNEELY, APPELLEE.

**6**

(No. 1078—Decided December 29, 1969.)

*Mr. Joseph H. Ellison*, for appellant.
*Mr. Richard M. Christiansen*, for appellee.

PUTMAN, J. This is an appeal on questions of law from a judgment of the Richland County Common Pleas Court, Division of Domestic Relations, denying appellant-father custody of his minor children, in an action in habeas corpus.

This action in habeas corpus did not originate in this court.

The Richland County Common Pleas Court found the claim of the appellee-mother to custody of her minor children to be good as against an action in habeas corpus brought by the father who had been awarded permanent custody under an Oregon decree resulting from an action instituted in Oregon by the appellee-mother.

The mother defended the Ohio habeas corpus action upon a temporary custody order which the Richland County court had given her *ex parte*, without notice, hearing, or evidence, based solely upon her petition verified absolutely.

Her petition and the temporary custody journal entry read:

"Plaintiff * * * says that she is the mother of the minor children, * * * age 11 years, 8 years, 7 years, who presently reside with her at * * * Richland County, Ohio; that said children are not the wards of another court of this state; that on September 22, 1967 this plaintiff obtained a decree of divorce * * * in this court from the defendant, the father of said children, who prior thereto wrongfully removed said children from her and from the state of Ohio and concealed them outside the state of Ohio and thereafter fraud-

ulently obtained an order of custody of said children from a court of the state of Oregon, that the defendant resides at * * *, Oregon, and since obtaining said order has neglected said children and refused to provide them with proper subsistence, education, and medical care and other care necessary for their well being; further, that plaintiff has remarried and is able to provide said children with proper care and that plaintiff fears with reason to fear that unless enjoined the defendant will attempt to take said children from plaintiff."

The prayer is for orders of temporary and permanent custody.

### Journal Entry

"During the pendency of this cause the plaintiff * * * is granted the care and custody of the minor children, and the defendant, is enjoined from taking said children from the plaintiff; further, this matter shall be heard before the court on January 31, 1969, at 9:00 o'clock a. m. or anytime thereafter agreeable to this court, further, that a certified copy of the petition and this entry be forthwith mailed by the clerk of court to the defendant at his last known address by registered mail."

### I.
### The Facts

The following was stipulated.

Appellant-father and appellee-mother were married and resided in Ashland County, Ohio, where, prior to 1967, she instituted divorce and custody proceedings. The parties reconciled at the request of appellant, moved to Richland County, Ohio, and the divorce proceedings were dismissed.

About a week later the father left the mother and took their three children with him and hid himself and the children in the state of Oregon. Whereupon, the mother secured an Ohio divorce in Richland County obtaining service by publication. The decree of September 20, 1967, made no custody order because "the children of the parties are not within the jurisdiction of the court."

In June 1968 appellee-mother discovered appellant-

father and the children in Oregon. She traveled to Oregon and there filed an action in habeas corpus. Upon hearing, custody was denied appellee-mother and a decree of permanent custody to appellant-father was made September 17, 1968, providing for Christmas 1968 visitation rights, and, pursuant thereto, the children were sent to Richland County, Ohio.

On January 2, 1969, appellee-mother filed, in Richland County, Ohio, a petition for custody and, solely upon her petition, received an *ex parte* temporary custody order without notice, hearing or testimony.

On January 7, 1969, appellant-father filed an action in habeas corpus in Richland County, Ohio, seeking custody of the three children.

On January 9, 1969, the parties submitted the matter upon a stipulation of the foregoing facts, and custody was denied by entry filed January 15, 1969, from which appellant-father takes the instant appeal, claiming the *ex parte* order was void.

Here ends the recital of stipulated facts.

Subsequent to the judgment denying custody in the habeas corpus action, which is the subject of this appeal, the appellant-father filed his answer to the appellee's change-of-custody petition in Richland County, Ohio, in which he challenged the jurisdiction of the court over the subject of the action and, without limiting his appearance, further answered by general denial.

II.

THE LAW

An action in habeas corpus can be maintained only against those court orders which are void and subject to collateral attack. *In re Frinzl*, 152 Ohio St. 164.

Only those matters which utterly defeat the power of the court to act in any manner whatsoever are reachable by a petition in habeas corpus. (Section 2725.05, Revised Code.)

All other claims of legal infirmity must be raised by appeal. *Ex parte Flicker*, 117 Ohio St. 500.

III.

The Ohio Constitution (Section 4, Article IV) pro-

vides, in substance, that the Courts of Common Pleas shall have such juridsdiction as is fixed or provided by law.

In pursuance of this directive, the Ohio Legislature has enacted two statutes which are of interest in evaluating the *ex parte* order in this case:

Section 2151.23, Revised Code.

"(A) The Juvenile Court has exclusive original jurisdiction under the Revised Code:

"* * *

"(2) To determine the custody of any child not a ward of another court of this state;"

"* * * *"

Section 3105.20, Revised Code.

"When it is made to appear to the Court of Common Pleas, or a judge in vacation, that a party is about to dispose of or encumber property, or any part thereof, so as to defeat the other party in obtaining alimony, *or that any party to the action or a child of any party is about to suffer physical abuse, annoyance, or bodily injury by any other party therein,* the court or judge may allow an injunction, with or without bond, to prevent such action. A party may sell and assign the order for alimony or allowance, after it is made. In any matter concerning domestic relations, the court shall not be deemed to be deprived of its full equity powers and jurisdiction." (Emphasized portion added effective December 19, 1967.)

No attempt was made in this case to invoke the provisions of Section 2151.27 *et seq.*, Revised Code. See *James v. Child Welfare Bd.*, 9 Ohio App. 2d 299.

At the time of the decision in the case of *In re Wolfe*, 91 Ohio Law Abs. 167, Section 2151.23 (A) (2), Revised Code, read "to determine the custody of any child not a ward of another court."

In the *Wolfe case* it was held that a California court was "another court" within the meaning of that jurisdictional grant, hence Ohio courts were wholly without power to act in cases of foreign custody decrees.

The Legislature amended the statute to change the rule of the *Wolfe case* by adding the words "of this state."

This established a clear rule that the Ohio jurisdiction-

al grant to decide custody cases involving minor children is not to be automatically defeated as a matter of local Ohio law merely by reason of the sole fact of the existence of a pre-existing valid foreign custody decree. This consideration is entirely separate from whether in a specific case federal full faith and credit prohibits exercise of the state jurisdictional grant.

## IV.

We turn now to the examination of the narrower question of the validity of the particular *ex parte* order *pendente lite* which the habeas corpus petition attacked in this case.

It is agreed by counsel that the law is, and we find it to be settled, that a foreign custody decree is not binding upon any court when it is shown that a substantial change in the conditions and circumstances affecting the welfare of the child has occurred after entry of the foreign decree. *Bain* v. *Rose*, 103 Ohio App. 297. Authorities are collected in 24 American Jurisprudence 2d 1140, Divorce and Separation, Section 1000, ''Change from Custody Awarded by Foreign Decree.''

The petition upon which the *ex parte* temporary custody order was issued alleged such changes.

Therefore, the Ohio court could give full faith and credit to the Oregon decree and, nevertheless, adjudicate the issue of substantial changes subsequent thereto the same as the Oregon court could have done.

## V.

However, the nub of appellant's habeas corpus petition was that changed circumstances cannot be shown by petition alone. He claims the ''changed circumstances'' rule cannot operate except after an evidentiary hearing attended by compliance with Ohio statutes, personal jurisdiction over him and federal due process.

Entirely separate from any consideration of the validity of the Oregon judgment or any federal constitutional issue regarding the extra-territorial effect thereof, is the question of the valitity of the Ohio *ex parte* order under Ohio law.

The point of the appellant-father's contention is that

until the "changed circumstances" claim is proved in a due process evidentiary hearing his Oregon custody decree stands, and the appellee-mother who invoked the jurisdiction of the Oregon court, and having taken no appeal therefrom, is estopped to assert any invalidity therein.

Personal jurisdiction is essential to deprive a parent of his or her personal right to the immediate possession of minor children. *May* v. *Anderson*, 345 U. S. 528, 533.

Jurisdiction over the person of both parents is a jurisdictional condition precedent to the power of Ohio divorce courts to modify Ohio orders respecting custody of minor children. Section 3105.061, Revised Code.

## VI.

The question is, did this Ohio court have the power to make this particular child-custody order.

As a general proposition the Common Pleas Court, Division of Domestic Relations, of Richland County, has Juvenile Court powers under Chapter 2151, Revised Code (Section 2301.03 (G), Revised Code).

However, it is not jurisdiction in this sense that appellant claims was lacking in the lower court order. Appellant claims the court lacks power to exercise this jurisdiction *ex parte* in favor of one parent over the other on the particular facts here.

No claim is made that the wrong judge issued the order. The claim is that the journal entry is a nullity in the absence of notice, personal jurisdiction over appellant and a due process evidentiary hearing.

He claims these are required both by the federal Constitution and the Ohio statutes conferring the jurisdiction over the subject of the action.

We do not reach a federal due process issue unless we find the *ex parte* order *pendente lite* to be authorized by Ohio statute. Therefore, we turn to the Ohio statutes.

## VII.

The mother's petition contained claims which could be translated into the statutory requirements of Section 3105.20, Revised Code, that, in substance, the children were "about to suffer physical abuse" and "annoyance" in Ohio.

The Ohio court of original divorce now has the mother and children before it in the state of Ohio which, according to the petition now before it, is the state of bona fide domicile of the mother.

The Ohio jurisdictional claim, therefore, relative to the temporary order rested upon statutory authority, bona fide domicile, residence and presence of the mother and the presence of the children.

Mr. Justice Jackson, dissenting in *May* v. *Anderson*, 345 U. S. 528, expressed the fear that the law of custody had been reduced to a rule of seize-and-run and spoke of the importance of the right of children "to have their status determined with reasonable certainty, and to be free from an incessant tug of war between squabbling parents."

Counsel for the appellant-father pursuing the same sentiment characterized the developments before us as "lawlessness."

If the children are truly being pushed around in a game, it is a game the appellant-father started, and, pursuing the analogy, the ruling protested occurred in their home ball park.

This is not to suggest that "sauce for the goose" is a maxim of equity within the meaning of Section 3105.20, Revised Code.

It is to say that any other ruling by the trial court on the record before it both at the time of the *ex parte* order and in denying relief in habeas corpus would render the state utterly powerless to inquire into alleged abuse of minor children temporarily visiting within its territory.

It would be a mockery for the state to order the children back to Oregon and then attempt to determine the truth of the charge that the father was there failing to provide them with subsistence, education and medical care.

It remains to be seen whether those allegations are true or a sham to avoid federal full faith and credit.

## VIII.

Having determined that the *ex parte* order was authorized by Section 3105.20, Revised Code, we confront the federal question of whether full faith and credit requirements

allow an Ohio court to exercise general equity jurisdiction in such a way as to suspend, *pendente lite*, the validity of a valid foreign decree as to permanent custody of minor children, when the children are in Ohio solely on visitation rights contained in the foreign decree and the parent entitled to custody under the foreign decree is not subject to the personal jurisdiction of the Ohio court.

We must presume the Oregon decree to be valid on this record.

The mother's petition upon which the order was obtained alleged the bare legal conclusion that appellant-father secured the Oregon decree by fraud, but we disregard the allegation because there are alleged no operative facts specifying the nature of the fraud or justifying such a conclusion.

Likewise, the bare allegation that the father "wrongfully" took the children from the state of Ohio to Oregon must be judicially ignored.

Section 3103.02, Revised Code. "The husband is the head of the family. He may choose any reasonable place or mode of living and the wife must conform thereto."

The father had an equal right to the custody of the children, under Section 3109.03, Revised Code, and a right to move and take them with him.

Ohio orders changing foreign custody orders involving minor children, which changes are made during periods of visitation in Ohio provided for in the foreign order, must be void if Ohio courts swallow the medicine of their own *dicta*.

Two Ohio cases declare with proud confidence, by way of *obiter dicta*, that our Ohio custody decrees would promptly be protected by federal court intervention under the federal full faith and credit guarantees from any attempt of another state to acquire jurisdiction over our Ohio minor children in other states temporarily there on visits.

"* * * The Illinois court could not acquire jurisdiction over these children while they were temporarily in the state. The domicile of the father and the children controls. *Kenner v. Kenner*, 139 Tenn. 211. See Bailey on

Habeas Corpus, 580." *Cohen* v. *Judge*, 13 Ohio App. 449, at 451.

"* * * So far as we are advised it has never been held that any order of a court, especially temporary in character, authorizing the custodian of a minor child to take such child outside of the state, is, by reason of the temporary absence from the state of Ohio of the child, a surrender or loss of the Ohio court's jurisdiction over the child. Indeed, the federal constitution abundantly protects any judgment or order made by the Ohio court in that behalf. The full faith and credit clause of the federal constitution guarantees to every state the verity of its public acts, records and judicial proceedings, of which every other state is bound to take notice under the comity provision. It matters not that in some instance, Louisiana, or some other state, deemed it wise to violate this provision; it is quite evident that had the matter been tested in any federal court the state court would have been brought to justice under the federal provision." Wanamaker, J., writing for a unanimous Ohio Supreme Court in *Addams* v. *State, ex rel. Hubbell*, 104 Ohio St. 475, 480.

Is there not a judicial "golden rule" requiring us to extend to foreign orders the same protection we expect for our own?

We think there is. But we distinguish this case on its particular facts.

Here the appellant-father did not hold his "pat hand" and wait, as Judge Wanamaker advised, for intervention based upon federal full faith and credit either from this court or any intervening federal court but elected to "draw cards" in the Ohio court which had originally granted the divorce and needed only personal jurisdiction over him to entitle its own orders to the protection of the same full faith and credit clause he asserts.

Because we conclude that the appeal questioning the validity of the *ex parte* temporary order is moot, we do not reach the issue of whether jurisdictional disability, or "error only," or neither of the two, flows from the fact that the children were brought before the Ohio court while in this state solely under visitation rights provided by a

valid foreign custody decree, at a time when the Ohio court had no personal jurisdiction over the father who was entitled to custody under that decree.

IX.

We find the appeal to be moot for the following reasons.

Subsequent to the journalization of the entry of the Richland County, Ohio, Common Pleas Court denying custody to the appellant-father in his habeas corpus action, he entered his general appearance by answer to the appellee-mother's separate petition for permanent custody.

That court, being the one which originally granted appellee her divorce from appellant where appellant was served by publication and the children never previously before it, now has before it generally and without reservation both parents, the original parties to the divorce, and the children, and has jurisdiction over the subject of the action by reason of Section 3105.061, Revised Code.

An evidentiary hearing has been held with appellant-father present and participating, and a memorandum of decision respecting custody has been filed.

No appealable order has yet been journalized in pursuance thereof.

Section 3105.061, Revised Code, provides:

"In any action arising under Sections 3105.01 to 3105.-99, inclusive, of the Revised Code, where the court has continuing jurisdiction of the subject matter and has once acquired jurisdiction over the person of the parties, the court shall retain jurisdiction over the parties until any judgment order or decree or modification thereof is complied with and satisfied and the court shall retain jurisdiction over said parties for the purpose of the modification of any order or decree relating to the support or custody of the minor children of the parties.

"Service of notice on any party of the filing of a motion or application to reduce support payments to judgment may be made by personal service, residence service, or registered or certified mail, directed to the addressee only at his last known address within or without the state of Ohio."

Therefore, under Section 3105.061, Revised Code, the

court which granted the divorce and now has acquired personal jurisdiction over both the parties, and now having the minor children present and jurisdiction over the subject of the action, is fully empowered to journalize its adjudication of the issue of custody.

An adequate remedy at law by way of appeal exists therefrom.

For the reasons stated, this appeal is now moot and will be dismissed.

*Appeal dismissed.*

Van Nostran, P. J., concurs.

Rutherford, J., concurs in the judgment. I concur in the judgment for the reason that the Common Pleas Court of Richland County, Division of Domestic Relations, by the fact that plaintiff-appellant has entered an appearance in a prior action for custody filed by the mother, has acquired jurisdiction to make a determination of each of the issues presented, including the issues of whether the status of the children in Ohio was such as to afford jurisdiction to an Ohio Court and whether, under the factual situation as disclosed by the evidence, full faith and credit must be given to the decree of the Oregon Court. In the stipulation of the parties, upon which the habeas corpus proceeding was presented, it was not stipulated that the children were in Ohio for purpose of visitation pursuant to the order of the Oregon Court, although that is a fact which may appear in the pending case. As stated in the majority opinion, if any of the issues in the pending case are erroneously determined adversely to him, the father will have adequate remedy by way of appeal.